Our final case this morning is No. 23-2215, VOXX International Corp. v. Southwest Dealer Services, Inc. Okay, Mr. Santuri. Good morning, Your Honors. I'm going to close the court. I'm Ryan Santuri on behalf of VOXX International and this appeal. VOXX is formerly known as AudioVOXX, that may be more familiar. It's a publicly traded electronics manufacturing retailer. We are here before the court today on appeal of a dismissal of a patent infringement action from Central District of California on ALICE at the motion to dismiss level. I would like to, before I jump into the issues, briefly touch on the products at issue that we have in this case. The products themselves are vehicle security systems. They would have been typically installed at dealer lots prior to purchase. What this allowed the dealers to do was install them initially, and then once you had a purchaser, they may or may not have wanted certain dealer options. And the system that's claimed in the 135 patent essentially allowed the dealers to, without having to rip the parts out, without having to stock a bunch of different parts, they were able to reconfigure these devices wirelessly in order to provide whatever functionality that the customer actually wanted. So you pre-install everything into the car, and then at the dealership, you turn on some, you turn off others. Yes, Your Honor, they pre-install them at the dealer, so this wouldn't have been a manufacturer level. This would be the car gets to a dealer, the dealer installs all the components, the control module and the function module. And then when the customer says, well, I want a full security system or I want remote keyless entry system, only I don't want to pay for the security system. The dealer was able to then reconfigure it without having to either go to the work of actually uninstalling and ripping the components out, or on the other hand, selling the car as is, but not being able to set to charge the customer because they didn't want that functionality, essentially losing the cost of those units that they had pre-installed. So that was that was sort of the premise behind this. Do you agree that Claim 1 is representative? Yes, Your Honor. I think that I think that the Claim 1 is representative of all of these. And we don't have to worry about claim construction, right? Yes, Your Honor, I believe that's true. There was no claim construction. And below, you didn't argue that there's any fact questions, is that right? I don't think that's entirely right, Your Honor. I think that what we argued in particular in the motion at the hearing was that the patent itself, along with the allegations of the complaint, which included the actual pictures of the accused products and the description of how they functioned, we argued that those facts were sufficient to get beyond the ALICE analysis. And the primary issue, one of the primary issues we are here on today, is whether when the court ultimately said, I don't I don't see enough explanation of how this works to find an inventive concept. And therefore, this doesn't meet Step 2 of ALICE, whether that was an error, because we believe that the specification provided sufficient detail. If you had one of skill in the art explaining that to the court, whether through fact or expert testimony. But you didn't argue some kind of claim construction argument where whatever is contained in the specification should be shoveled into any particular claim terms. Is that right? I think there's two issues there. One, we didn't argue that the terms of the patent needed some particular construction in order to reach the issue. However, they have to they still have to be understood. Even even the plain language of the of the specification of the claims requires that those be viewed through the eyes of one of ordinary skill in the art. And that's really the argument that we've made in our in our initial brief, too, is that just because we're not saying that a term requires a particular construction that one would explain to the jury, you still need to know how one of ordinary skill in the art would understand this technology. And that could come in through expert testimony without ever touching whether it meets a particularized definition. I'm not sure that I understand that. So you're saying the detail, the details of how to put these three modes together is in the specification. Judge Chen was asking you how that then read into the claim, and I don't understand how that gets read into the claim. Well, for example, the judge Chen kept going back to, you know, from our perspective, we believe it was an overgeneralization of the claim. But, for example, I'm sorry, you're going to judge Wu. Sorry. Yes, OK. I apologize, Your Honor. The what I'm saying at the district court level, the court was asking for, you know, you're not really answering my question. What's the answer to the question? What you claim there are details in the specification as to how to do this. Those are not in the claim. How do we get them into the claim? I think that I think that stepping back as a general principle, when you read the claims, you have to read them in view of the spec. I mean, that's that's what all the case law says. And so, for example, when we are reading the specification, are you saying that the claims are limited to the specific implementation shown in the spec? No, Your Honor. No, I didn't think so. But what I'm saying is that the claims have to be understood in view of the spec. So, for example, when the district court said, I don't see how the restricting, I don't see how the claim limitation that restricts to a singular mode. There's no description of that. We don't believe that's true. There is no request for claim construction and proposed no claim constructions needed to be done before deciding the motion to dismiss, right? Correct, Your Honor. So so, for example, when the court says, we I don't see any details on how restriction was done. We disagree with that. It's explained. Ways to do that are explained within the specification. For example, it describes how you could use. It sounds to me as though what you're saying is made a deliberate choice to write the claim so that they were as broad as possible. And that the implementation in the described in the specification was much narrower. And I'm not understanding how you can say that's an answer to your one on one problem. Your Honor, the stepping back, the yes, there are multiple embodiments described in this. Well, there's one particular embodiment described in the spec. You're correct. No, I'm not suggesting that the claim itself is limited by a particular embodiment. What I'm saying is that the judge says there's nothing described within the patent that explains to me how, for example, the modes are restricted. I think one of skill in the art reads the specification and says, well, the idea is that you could you get credit for inventing something if you said how to do it. But if you choose to go beyond what you've discovered as to how to do it, to claim much more broadly than you run into the abstraction problem. I respectfully disagree on that, Your Honor. I think that the whole purpose of the specification is to explain ways in which the claim can be implemented. Here, for example, to restrict the mode of operation, you could use jumpers. One skill in the art would know how to do it. It's set forth right in the claim. At the same time, you know, the Supreme Court has told us that when it comes to Section 101 and abstract idea, we have to look at your claim and think of the abstract idea exception as serving some kind of gating function. As to whether or not you're even allowed to have a claim like this considered for the patent system, if your claim is written on such a broad abstract level that it doesn't even properly define invention for the patent system. And so that's where we have to figure out, have you violated that principle here? When I look at your claim, am I supposed to be thinking about like a remote control device? So the control module, the function module, that's what this claim is directed to? So the security system that's installed in the vehicle has a control module and a function module. The patent also describes in order to program those, so stepping back to what we discussed earlier, when it comes to customer only wants remote keyless entry, the dealer is able to wirelessly, as one way, can wirelessly configure it to only provide remote keyless entry. That was done via the wireless transceiver that's described in the specification. That's how to wire, and in fact, I think wirelessly selecting is in the claim language itself. I guess here's a hypothetical. What if I had a control panel in my family room? And this control panel has three modes of operation. It can control the TV, it can control the overhead lights, and it can control the window shades in the family room. And then I draft a claim that says a multi-mode control system having three modes, TV mode, overhead lights mode, window shade mode, period. Would you think that's a patent eligible invention, or would you think that's an abstract idea? I think you'd still have to come back to the specification and see how it's described, Your Honor. I think we have a number of cases that this court has... Let's just assume plain and ordinary meaning for my control system having three modes. TV mode, window shade mode, overhead lights mode, period. Do you think that's just the abstract idea of a control system having three modes? No, Your Honor, not if it's properly described in the specification. Not if it's directed towards a question that's been identified by the inventor as something that needs to be overcome within the art. I mean, here we have, not simply as in the examples that Southwest Dealer Services provides, they talk about, well, it was known that you could arm or disarm a security system in the past. That may be true, but here we had a system that had three different modes. You could enable one, and at the same time, you can restrict the use of the others. And the idea was that when a customer only told you they wanted remote keyless entry, and they only paid the dealer for remote keyless entry, when they left, they weren't able to get back into the... What if my claim was a magic machine that controls the TV, the window shades, and the lights? That's not an abstract idea claim? Your Honor, I think if somebody claims something is a magic machine, they're going to have a number of problems. I'm just trying to figure out where, at what point do you think something becomes an abstract idea? Well, I think at the point we were talking about, you have specific, here we have a specific control module and a function module. Is your answer that it's an abstract idea unless there's some specific teaching in the specification of how to do it? I think that is part of it. I think this Court, in some of its decisions, has specifically cited to, for example, the specification and the explanation of the specification for doing it. For example, the BASCOM decision and several others have... Is it your view that a reference to a physical device in the claim means that the claim cannot be directed to an abstract idea? I don't think that would necessarily be consistent with this Court's case law on it. I think, for example, the Chamberlain case made a big deal over, just because you have a physical device, it's not abstract. But I think in the Chamberlain case, at least in my view of it, what was abstract was the idea that all you were getting was a status alert of the status of something, as opposed to here, where you could actually configure this physical device to perform certain functionalities and lock out other functionalities. I thought you might have contended that you said, are there any factual disputes that you were arguing to us or no? Well, from our perspective, we believe that the District Court misunderstood or needed the benefit of testimony and expert testimony in particular to be able to better understand the technology that was described in the specification. The lower court said he was unable to find an explanation of, for example, how this device worked. We think that if he had, if we've gone past the motion dismissed and been able to get evidence on that, we could have better addressed this. And so that's one of the issues that we've raised. I do, I see I've gone into my rebuttal time. Okay, we'll let you save the rest of it. Thank you, Your Honor. Mr. Lewin. May it please the Court. Represent the Appalachee Southwest Dealer Services. And I want to start off by making clear that Vox seems to be asking for a change in the law in their briefing, and to some extent in their argument today, for mechanical and electrical hardware devices, they think Alice shouldn't apply, that 102, 103 should apply. And for all the references in the briefing and this morning about the accused product, they cite to the Research Court versus Microsoft case, which is a pre-Alice case that doesn't follow the Alice case law. By contrast, the district court properly applied the two-step Alice framework to Representative Claim 1 in great detail. And the court found that Claim 1 was an abstract idea, and actually the verbatim wording of the abstract idea found by the district court was taken from Vox's district court opposition brief to our motion to dismiss. So it was their definition of what the inventor invented. And, you know, as mentioned earlier, neither party raised claim construction, and very importantly, there's not a single factual allegation in the First Amendment complaint relating to 101. So there's no well-pleaded allegations regarding the 101 issue. And at the hearing, Vox admitted that any further amendment to the complaint would be futile. So the primary basis for the district court's ruling was that the claim language is purely functional and results-oriented. The selecting of a mode and restricting of other modes, and that the claim is missing the how for both selecting and restricting. And I think that goes back to the discussion of, you know, an incompletely drafted claim or a specification disclosure that doesn't link to the claim language itself. There's just nothing in the claim that explains how those steps are done. So the operations that are in the claim are generic. The components that are in the claim are generic. What is your response to opposing counsel's argument, at least I just heard that there were some factual disputes that need to be resolved before the motion to dismiss could be decided? Yeah, I don't think there are. I think this is a case like in Sanderling where a district court shouldn't be required to rule on a vague and generalized assertion of a fact issue. If you go back to the, where this was raised in the briefing in the district court, there's a very vague statement that just says the foregoing creates a fact issue. And so there really wasn't anything specific from our standpoint of a fact issue at the district court. And in fact, the district court's order didn't make any fact, explicitly stated that it didn't make any factual findings. It considered a number of things, the patent, certain parts of the file history and other documents, but did not make any factual findings as to them. So we don't think that there is any fact issue that would prevent dismissal of the complaint. Was there ever a request for some type of discovery that needed to be taken before the motion to dismiss was ruled on? I'm sorry, could you repeat that? I'm sorry, was there ever a request for any type of discovery that needed to be taken before the motion to dismiss could be ruled on? No, Your Honor. So I would just point out also at step two, the DOCSIS briefing basically tried to repackage the abstract idea and try to supply the inventive concept in that way. But of course, there's quite a bit of Federal Circuit case law that says you can't do that. And again, the how missing from the claim is also relevant to step two. And that how can't be provided by the spec. I know counsel for Vox said that one of ordering skill in the arts should come in and interpret the specification and then the claims could be understood in light of the specification. But to me, that sounds like an admission that the specification does not link to the claims and that you'd actually need an expert to come in and explain the how that's not actually even presented explicitly. But he's also saying the specifications description doesn't limit the claims. It's not. It doesn't limit the claims, which is the very problem with things being abstract. Right. So, you know, our position based on the law is that the inventive concept must be evident in the claims and we don't think that's the case here. So unless the panel has any further questions, we'll ask for the court to affirm. Okay, thank you. Mr. Santuri, you've got almost two minutes. Thank you. So to sort of circle back to something that we touched on before, the district court said that he needed additional details about how to realize the incorporation and restriction that's referenced in the claim. This is where I sort of come back to the district court apparently wasn't in a position based on the specification, the complaint and everything else to determine how these features would be implemented. But it was... Did you ever make any express request for discovery before the motion to dismiss could be ruled on? No, Your Honor, we did not. We, I mean, ultimately at the end of the day, we, I think that the patent itself is in the record. The amended complaint was in the record. We believe that one of Ernie's skill in the art would understand exactly how the incorporation of these modes is in there and how they are restricted. The district court didn't or said that it wasn't present and that's why I think in light of that, that's where we come back to, you know, ultimately the step two of the process where we have to look at whether something is conventional, routine, not out of the ordinary. I don't know how a district court judge that doesn't necessarily know the technology area or know the technology is in a position to do that without evidence and without testimony. But ultimately, the court at the, you know, really there was reference to the fact we didn't request to leave to amend again in the court's, in the district court's ruling and at the hearing, the district court basically said, you know, he didn't see anything presented. What's the factual allegation in the complaint that you say precludes dismissal? Well, I think that that's, I, so we didn't, we didn't go through the specification and start plugging in factual allegations drawn direct from the patent. The patent was part of the, you know, part and parcel with the complaint. The answer is there's nothing in the language of the claim. Of the complaint. Well, I think that. Other than the incorporation of the patents. Well, certainly there are allegations that the patent was valid and enforceable, but I'm not aware of any court case, any of this court's decisions that say that we have to, you know, add magic language to the complaint. The court has the complaint to itself. Just to put a pin on this. Can you point to any specific paragraph in the complaint that raises a specific factual dispute before the inquiry could be resolved at the motion to dismiss stage? In the complaint, no. In the, in the specification that's referenced in the complaint, yes. Okay, thank you very much. Thank you. Thank both counsel. The case is submitted. That concludes our session for this morning.